UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LONNIE SPORTSMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:10CV513 TIA |
| ) | |
| BNSF RAILWAY COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant BNSF Railway Company's Motion for Summary Judgment. (Docket No. 19). Plaintiff filed a Memorandum in Opposition (Docket No. 25) and Defendant filed a Reply (Docket No. 31) thereto. All matters are pending before the undersigned United States Magistrate Judge, with the consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Lonnie Sportsman ("Sportsman") filed a Complaint against Defendant BNSF Railway Company ("BNSF") alleging he sustained injuries and damages as result of a motor vehicle accident ("MVA") while being transported in a 2009 Toyota Sienna van. (Plaintiff's Compl. at ¶¶ 6-7). Sportsman contends that his injuries and damages were caused by BNSF's negligence. (Id. at ¶ 7).

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of the motion, Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith

Radio, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. Id. The non-moving party may not rest upon her pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. Celotex, 477 U.S. at 324.

Summary judgment is a harsh remedy and should not be granted unless the movant "has established [its] right to judgment with such clarity as to leave no room for controversy." New England Mutual Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). The Eighth Circuit has noted, however, that "summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir. 1988).

The Supreme Court has relaxed the standard of proof necessary to get a FELA case to the jury, articulating the standard as whether "employer negligence played any part, even the slightest in producing the injury." Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 542 (1994). The FELA imposes on a railroad a general duty to provide a safe workplace. Peyton v. St. Louis Southwestern Ry. Co., 962 832, 833 (8th Cir. 1992). Plaintiff is proceeding on his negligence claim under the FELA, a process "significantly different from the ordinary common-law negligence action," Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 509-10 (1957), which holds an employer to a standard of "reasonable foreseeability of harm" and measures that standard by what "a reasonably prudent person would anticipate" in light of all the surrounding circumstances. Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 117-19 (1963). Recovery is permitted if injury results "in whole or in part from the negligence of" the railroad, or due to any "defect or insufficiency, due to its negligence, in its ...

tracks, roadbed, ... or other equipment." 45 U.S.C. § 51. An employee bringing a FELA claim must prove that the railroad was negligent and that such negligence was the cause of the injury. Atchison, T. & S.F.R. Co. v. Toops, 281 U.S. 351, 354 (1930); Northwestern P.R. Co. v. Bobo, 290 U.S. 499, 502-03 (1934) ("The jury may not be permitted to speculate as to its cause, and the case must be withdrawn from its consideration, unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer."). The employee must prove negligence on the part of the railroad in a FELA claim. Tennant v. Peoria & Pekin P.U. Ry. Co., 321 U.S. 29, 32 (1944). Each and every element as is required under a common-law negligence action must be proved in a FELA negligence action or the cause of action fails. Davis v. Burlington Northern, Inc., 541 F.2d 182, 185 (8th Cir. 1976). In determining negligence on the part of the railroad the general rule is "the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done." Tiller v. Atlantic Coastline R.R. Co., 318 U.S. 54, 67 (1943). The scope of a railroad's duty is therefore limited to those workplace hazards that the railroad could have reasonably foreseen. See Gallick, 372 U.S. at 117 ("[R]easonable foreseeability of harm is an essential ingredient of [FELA] negligence."). To prevail, a FELA plaintiff need only show that "employer negligence played any part, even the slightest, in producing the injury ... for which damages are sought." Rogers v. Missouri Pac. R.R. Co,, 352 U.S. 500, 506 (1957).

### **The Undisputed Evidence before the Court on the Motion**

Viewing all facts and drawing all reasonable inferences in the light most favorable of the

nonmoving party, A. Brod, Inc. v. SK & I Co., L.L.C., 998 F. Supp. 314, 320 (S.D.N.Y. 1998) the Court sets forth the following facts:

**1. Background**

Sportsman filed the instant Complaint pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60, alleging he sustained injuries and damages as result of a motor vehicle accident ("MVA") while being transported as a passenger in a 2009 Toyota Sienna van. (Pltf.'s Compl. at ¶¶ 6-7). The accident occurred at/near West Quincy, Missouri on November 7, 2008. (Id. at ¶¶ 5-6). Kevin Doran ("Doran") operated the van in the course and scope of his employment with Rail Crew Xpress. (Id. at 5). Sportsman contends that his injuries and damages were caused by BNSF's negligence. (Id. at ¶ 7). In particular, Sportsman alleges that BNSF and its officers or agents were negligent in failing to provide reasonably safe conditions for work and a reasonably safe place to work; negligent by failing to keep a careful lookout; and by failing to properly inspect, test or maintain the van and its seat belts. (Id.).

The only other vehicle involved in the MVA on US 24 at the east entrance to the Ayerco Convenience Store in West Quincy, Missouri was a 1993 Mercury Tracer operated by Vicki Hoener. (Deft.'s Exh. A).[1] Sportsman, a BNSF locomotive engineer, was a passenger in the van and was

---

[1] The report at issue is the Missouri Uniform Accident Report prepared pursuant to § 43.250 R.S.Mo. Sportsman's objection to the admission of the police report on the basis of hearsay is without merit inasmuch as police accident investigation reports are admissible under the public records exception to hearsay and thus appropriately offered in support of BNSF's motion for summary judgment. See Gaddy v. Hartford Life Ins. Co., 218 F.Supp. 1123, 1126 (E.D. Mo. 2002) (applying Fed.R.Civ.P. 803(8)(C) to police report). Rule 803(8)(C) carves out an exception for hearsay contained in public records and reports consisting of "factual findings resulting from an investigation made pursuant to the authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Civ.P. 803(80(C). Indeed, not only does Sportsman offer no grounds as to why the document might be inaccurate, evidence of its reliability is corroborated by Sportsman's deposition testimony agreeing that the

sitting in the second row on the passenger side at the time of the MVA. (Id.). Gary Collier ("Collier"), a BNSF conductor, was the other passenger in the van and was sitting in the front passenger seat. (Id.).

**2. The Motor Vehicle Accident**

On November 7, 2008, Doran picked up Sportsman and Collier from a hotel in Quincy, Illinois to transport them to BNSF's train depot in West Quincy, Missouri. (Deft.'s Exh. C at 34, 51). Prior to making the trip, Doran conducted a pre-trip inspection of the van including checking the seat belts for fraying and pulling to ensure the seat belts would latch. (Deft.'s Exh. D at 16-17). Upon entering the van at the hotel, Sportsman buckled his seat belt but he testified that he did not recall whether he checked the operation of the seat belt by pulling it tight. (Id. at 45-46, 61). Sportsman testified that he never found anything wrong or deficient with his seatbelt from the time he entered the van at the hotel until the MVA. (Id. at 46, 86-87).

In transit from the hotel to the train depot, Doran drove the van to a Burger King in Quincy, Illinois. (Deft.'s Exh. C at 61-62). At Burger King, Sportsman released his seatbelt and entered the restaurant and purchased food and beverage and then returned to the van and once again buckled his seat belt. (Id. at 62). Doran continued driving the van on west bound highway U.S. 24 across a bridge over the Mississippi River from Quincy, Illinois to West Quincy, Missouri. (Id. at 73). According to Sportsman, while transiting the bridge to the Missouri side, the van was behind a semi tractor-trailer in the right lane. (Id. at 73). According to Doran and Collier, after transiting the bridge, the van was in the left lane. (Deft.'s Exh. M at 27-28; Exh. N at 14). Highway U.S. 24 has two lanes in each direction, separated by a grass median the MVA site. (Deft.'s Exh. A).

police report to be accurate.

After crossing the bridge and heading in the direction of the Ayerco gas station ("Ayerco"), Sportsman recalled the van gaining on the semi tractor-trailer. (Deft.'s Exh. C at 74; Exh. D). According to Sportsman, after the tractor-trailer put on its right turn signal before entering the eastern entrance to Ayerco, Doran operated the van from the right lane to the left lane of westbound highway U.S. 24. (Id.). To enter the BNSF West Quincy, Missouri train depot, Doran would have to turn left off of highway U.S. 24 just at the western edge of Ayerco. (Deft.'s Exh. C at 51; Exh. D). As Doran approached Ayerco, the speed limit was 45 mph, and Doran estimated that he was traveling about 40 mph. (Deft.'s Exh. D; Exh. N at 14, 52-53; Doran Depo. at 32, 35-36). According to Sportsman, Doran chose to pass the tractor trailer once the truck driver signaled he was turning. (Deft.'s Exh. C at 74). According to Doran, he changed into the left lane while traversing the bridge. (Deft.s' Exh. 5 at 27). As Doran passed the tractor-trailer, Hoener pulled out from Ayerco's eastern exit and propelled the front of the Tracer into the van's right front passenger door and wheel area. (Deft.'s Exhs. A and C at 66-67, 74-76). Doran saw the Tracer at the last second before impact and noted that Hoener "pulled out right into the side of my van." (Deft.'s Exhs. A and M at 34-35). Immediately prior to the MVA, Sportsman testified that Collier said "Oh, shit!" (Pltf.'s Exh. 2-1 at 76). According to Doran, neither he nor Hoener could see through the tractor trailer, and if he would have been able to see Hoener pull out, he could have slowed down. (Pltf.'s Exh. 5 at 39). According to Collier, Hoener's car came out of the first entrance and "ran into the side of us." (Deft.'s Exh. N at 18). The witness at the scene of the MVA stated that Hoener's vehicle pulled into the path of the van. (Deft.'s Exh. A). The reporting officer noted that the MVA occurred when Hoener's vehicle hit the van in the passing lane of U.S. 24. (Id.).

After the MVA, Sportsman had no problem unbuckling the seatbelt, and he did not inspect

the seatbelt. (Deft.'s Exh. C at 87-90). Missouri State Highway Patrol Officer Paul Behrens investigated the MVA and authored the Missouri Uniform Accident Report dated November 7, 2008. (Deft.'s Exh. A). Officer Behrens cited Hoener for failure to yield. (Id.). On December 23, 2008, Hoener entered a guilty plea to Failing to Yield to Approaching Vehicle when Entering/Crossing Highway from Alley/Driveway. State v. Hoener, No. 060778426 ( Marion Palmyra) December 23, 2008); http://www.courts.mo.gov/casenet/.

Dave Nickles, the West Quincy, MO BNSF Trainmaster, interviewed Sportsman at the scene of the MVA but Sportsman did not report an allegation regarding the defectiveness of the seat belt. (Deft.'s Exh. C at 99). At the time of the MVA, Sportsman never said anything to Collier about the seat belt at the scene of the MVA. (Deft.'s Exh. C at 98; Deft.'s Exh. N at 23). After the MVA, Sportsman was not transported to the hospital for treatment of his injuries, but he was transported back to his hometown in another crew van by a different driver. (Deft.'s Exhs. A and C at 81-82). Sportsman did not recall telling the driver anything about the seatbelt or how the MVA occurred. (Deft.'s Exh. C at 81-82). On the ride back, Sportsman did not tell Collier anything about the alleged defective seatbelt. (Deft.'s Exh. N at 23-27).

Scott Tweet, the Brookfield, MO BNSF Trainmaster, interviewed Sportsman on November 8, 2008, the morning after the MVA. (Deft.'s Exh. C at 99-105). Sportsman did not recall telling Tweet about the alleged defective seatbelt. (Id.). Sportsman completed a BNSF Personal Injury Report wherein he indicated that the "driver of the other car" caused the MVA. (Id.). Sportsman first reported telling any BNSF manager or supervisor about the alleged seat belt defect was during the recorded statement made on November 25, 2008. (Deft.'s Exhs. C at 97-98 and L at 9). Sportsman also indicated that he did not see the other vehicle until "right at impact." (Deft. Exh. L

at 6). Likewise, Sportsman reported that Doran did nothing wrong to cause the MVA. (Deft.'s Exhs. C at 11-20 and L at 23-24). In the Employee Personal Injury/Occupational Illness Report, Sportsman reported that the accident was caused by the driver of the other car who received a citation and no defect or malfunction problem existed with any of the equipment. (Deft.'s Exh. J). Collier testified that Doran did nothing wrong to cause the MVA. (Deft.'s Exh. N at 181-19).

At the time of his recorded statement on November 25, 2008, Sportsman reported that upon impact, he "was whipped, my head and shoulders, behind the driver's seat, at one time I remember my head and shoulders, being clear over there." (Deft.'s Exh. L at 3). Sportsman also reported that the shoulder harness on his seatbelt failed to properly lock and restrain him inasmuch as he whipped around like a rag doll. (Pltf.'s Exh. 2-1 at 78-79). After the MVA, Sportsman unbuckled his seatbelt without any problems, but he did not test the shoulder strap before exiting the van. (Pltf.'s Exh. 2-2 at 89-90).
In his deposition, Sportsman opined that both drivers were at fault and that the accident could have been prevented if Doran elected to stay behind the tractor trailer instead of taking the unsafe route of passing the tractor trailer through the intersection. (Pltf.'s Exh. 2-1 at 20-21).

In her affidavit, Hoener avers that Doran was driving too fast for the conditions; that if Doran had been in the right lane of travel behind the tractor trailer the collision would not have occurred; that if Doran had been driving slower he would have been able to swerve and avoid the collision; and that it was unsafe for Doran to pass the tractor trailer at an intersection. (Stover Aff. at ¶¶ 7, 10-12). Hoener further opined that she "did not see the van prior to the collision because my vision was

blocked by the semi-tractor trailer in the right lane." (Id. at 9).[2]

The five keys to Smith System of driving are "Aim High in Steering, Get the Big Picture, Keep Your Eyes Moving, Leave Yourself an Out, and Mark Sure They See You." (Pltf.'s Exh. 4 at 33). According to Warren Grogan, a field safety advisor at RailCrew Xpress, a safe RCX driver should always leave himself an out, in other words, the driver should allow space to prevent a collision from happening. (Id. at 34). Grogan further testified that there are situations when a driver cannot keep a space cushion such as when the driver is in a left lane passing another vehicle in the right lane. (Id. at 36-37).

According to Sportsman, the accident could have been prevented if Doran would have stayed in the right lane behind the tractor trailer and allowed it to turn instead of taking the unsafe route and pass the tractor trailer through the intersection. (Pltf.'s Exh. 2-1 at 20-21). Sportsman claims that the lap part of his seatbelt loosened upon impact. (Pltf.'s Exh. 2-2 at 88).

## Discussion

In deciding a motion for summary judgment, the Court may consider only admissible evidence, and must disregard portions of declarations that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions of fact. See Shaver v. Independent Stave Co., 350 F.3d 716, 723 (8th Cir. 2003); Fed. R. Civ. P. 56(e). As BNSF noted, Hoener's affidavit contains in large part Ms. Hoener's statement of personal opinion, speculation, and conjecture rather than facts. "Under Rule 56(e), an affidavit filed in support of or in opposition to a summary judgment motion must be based upon the personal knowledge of the affiant; information and belief is insufficient" to

---

[2]Rule 56(e)(1) of the Federal Rules of Civil Procedure requires affidavits to be made on personal knowledge, set out facts that would be admissible in evidence, and show the affiant is competent to testify on the matters stated. Jenkins v. Winter, 540 F.3d 742, 748 (8th Cir. 2008).

create an issue of material fact. Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1367 (8th Cir. 1983). The Court therefore does not consider averments which merely constitute personal opinions as opposed to facts.

Hoener's conclusory assertions regarding Doran speeding and that he could have avoided the accident had he not been driving so fast are unsupported by any evidence and refuted by the record. Unsubstantiated and conclusory statements without support are not sufficient to create an issue of fact to defeat summary judgment. See Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but most substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."). Hoener avers that her knowledge is based on her being a twenty-three year old licensed driver in Illinois. Because Hoener is not competent to testify as to the ultimate issue in dispute, the undersigned will disregard her averments regarding Doran speeding and that he could have avoided the accident.

In the Motion for Summary Judgment, BNSF argues that Sportsman cannot provide substantial evidence to support his claim that BNSF or Doran could have reasonably foreseen the motor vehicle accident and that the van's seatbelt would fail to properly restrain Sportsman. Under FELA, an employer has a duty to provide its employees with a reasonably safe place to work. Crawford v. Norfolk & Western Ry. Co., 901 S.W.2d 252, 254 (Mo. Ct. App. 1995). The duty of providing a reasonably safe place to work does not require the elimination of all dangers, but it does require th elimination of the dangers which could be removed by the exercise of reasonable care on the part of the employer. Qualls v. St. Louis Southwestern Ry. Co., 799 S.W.2d 84, 86 (Mo. banc 1990); Crawford, 901 S.W.2d at 254. The burden is on the employee to show such negligence and

its causal connection to the injury.  Id.  However, the employee only needs to show the he was injured because of an unsafe condition that could have been reasonably removed by the employer, and that the employer's negligence played any part, even the slightest in producing the injury." Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 542 (1994).  "The defendant's duty is measured by what a reasonably prudent person should or could have reasonably anticipated as occurring under like circumstances." Davis v. Burlington N., Inc., 541 F.2d 182, 185 (1976).

BNSF's assertion that the instant action is most analogous to Richardson v. Missouri Pac. R.R., 677 F.2d 663 (8th Cir. 1982) is with merit.  In Richardson, the plaintiff alleged negligence on the part of the railroad's agent, an automobile driver, for failure to avoid an accident.  The accident occurred when a second driver ran a flashing red light at an intersection; further, the impact was almost simultaneous with a passenger's warning.  The Richardson court found that Richardson had failed to adduce any evidence of any probative facts to support a finding that the railroad's agent could have foreseen such an accident or that the agent could have avoided the accident.  Id. at 666.

In the instant case, the MVA occurred when Hoener failed to yield to the approaching vehicle when entering/crossing highway from alley/driveway.  Hoener received a citation for failing to yield and according to Collier, Hoener's car came out of the first entrance and "ran into the side of us." Sportsman also reported that he did not see the other vehicle until "right at impact."  From Sportsman's deposition testimony that he heard a sudden exclamation from Collier in the van immediately prior to the MVA, a reasonable inference can be made that the other vehicle acted in a way to surprise or alarm the passenger.  Sportsman's contention that the accident could have been prevented if Doran would have stayed in the right lane behind the tractor trailer and allowed it to turn instead of taking the unsafe route and pass the tractor trailer through the intersection.  Speculation

is not evidence, and even a FELA plaintiff needs some evidence to survive summary judgment. Lisek v. Norfolk & Western Ry. Co., 30 F.3d 823, 831 (7th Cir. 1994). There is no evidence to suggest that Doran was driving the vehicle in an unsafe manner in violation of any motor vehicle laws at the time of the accident or found to be the cause of the motor vehicle accident or ticketed for any traffic violation. Rather, all the proof is to the contrary. The record establishes that Hoener was responsible for causing the accident by her failure to yield by pulling into the path of the van driven by Doran. Sportsman has not submitted sufficient evidence showing that Doran could have reasonably foreseen that Hoener would have failed to yield and pulled her vehicle into the path of the van or could have prevented the accident. Sportsman has not presented more than a scintilla of evidence that his injuries were proximately caused, in some part, by BNSF's negligence. See Brady v. Southern Ry. Co., 320 U.S. 476, 479-80 (1943) (weight of evidence under FELA "must be more than a scintilla"). In light of the foregoing, Sportsman cannot defeat summary judgment by pointing to the his own conclusory and self-serving, and self-serving assertions in his deposition and the conclusory assertions in Hoener's affidavit.

BNSF also contends that Sportsman failed to show that the seatbelt did not properly restrain him, and thus BNSF cannot be liable for failing to discover the alleged defect prior to the accident. Beyond Sportsman's deposition testimony, he has offered no testimony, expert or otherwise, to support his defective seatbelt allegations. See, e.g., Briant v. Timpte, Inc., 2001 WL 388856, * 1 (8th Cir. 2001); Thudium v. Allied Prods. Corp., 36 F.3d 767, 769 (8th Cir. 1994) ("[T]he plaintiff must prove his claim without resort to conjecture or speculation and must demonstrate circumstances which point reasonably to the desired conclusion and exclude any other reasonable conclusion."); Bryant v. Laiko Int'l Co., Inc., 2006 WL 2788520, *9 (E.D. Mo. 2006). The undersigned finds that

Sportsman has failed to present any evidence beyond his personal opinion giving BNSF notice of the alleged defective seatbelt. Here, there is no evidence from which to infer that BNSF breached its duty to provide Plaintiff with a reasonably safe workplace, because there is no evidence that Defendant knew, or should have known, that the seatbelt was defective. See, e.g., Peyton v. St. Louis Southwestern Ry. Co., 962 F.2d 832, 833 (8th Cir. 1992) ("an employer is not liable if it had no reasonable way of knowing about the hazard that caused the employee's injury.").

Sportsman cannot establish his claim by asserting the seatbelt was defective. Sportsman must have evidence to establish the defective condition of the seatbelt. The record is devoid of any evidence showing that BNSF was negligent for failing to discover the allegedly defective seatbelt. The record shows that prior to making the trip, Doran conducted a pre-trip inspection of the van including checking the seat belts for fraying and pulling to ensure the seat belts would latch. Upon entering the van at the hotel, Sportsman buckled his seat belt but he testified that he did not recall whether he checked the operation of the seat belt by pulling it tight. Sportsman testified that he never found anything wrong or deficient with his seatbelt from the time he entered the van at the hotel until the MVA. Thus, the record is devoid of any evidence showing that BNSF had any knowledge that the seat belt worn by Sportsman was defective in any manner prior to the MVA. BNSF cannot be held liable as a matter of law inasmuch as BNSF had no reasonable way of knowing about the alleged defective seatbelt.

The undersigned having concluded that Sportsman has failed to set forth any facts to demonstrate either the breach of duty or foreseeability elements of their prima facie case, BNSF is entitled to judgment as a matter of law. Accordingly, the Court grants BNSF's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that Defendant BNSF Railway Company's Motion for Summary Judgment (Docket No. 19) is **GRANTED**.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this   26th   day of May, 2011.